Good morning. May it please the Court. Deputy Attorney General David Wildman for the Appellant Respondent. David L. Reynolds, the Warden. I'd like to reserve four minutes of my time for rebuttal, if I can. Just watch the clock. Yes, Your Honor. This is a simple case involving the third step of the Batson analysis. Whether the trial court's assessment of the prosecutor's reasons for his excusals, his promptly challenges, were genuine. The question for this Court here is whether the state court's conclusion was an unreasonable determination of the Batson claim in light of the evidence before the state court itself. Unfortunately, the district court got it wrong in this simple Batson case. First, the district court inappropriately found that D2 did not apply here because the California Court of Appeal did not apply the comparative analysis. However, in 2001, when the California Court of Appeal issued its decision, there was no Supreme Court authority that required state courts to conduct comparative analysis, nor is there such authority today. Millerell, which is the 2005 Supreme Court case, did not create a rule requiring a state court to address Batson with a comparative analysis. And this Court, in Alley v. Hickman, in Greenview v. Lamarck, has applied D2 to Batson claims even though the state court has not conducted comparative analysis. So for those reasons, because no Supreme Court authority compels the state court to conduct a comparative analysis, this is an ADP case that isn't held to deference under D2. And so does that apply to all four jurors? Yes, Your Honor. All right. And the mistake that you're arguing, that the mistake that was made by the Federal District Court was to engage in an independent comparative analysis, and that's what's prohibited? Is that what you're saying? I just want to be sure I understand what your argument is. Precisely, what did the Federal District Court do wrong? Well, the Federal District Court in Supplemental R&R, there was an R&R and then there was Supplemental R&R, said that the state court decision was not entitled to deference under D2 because the state court did not conduct the comparative analysis that's often conducted in the Federal courts. And my disagreement is that that deference should be still be given to the state court decision, even though the state court decision didn't conduct the comparative analysis. A comparative analysis is simply another way of analyzing the facts which were before the state court and looking to see if the prosecutor's reasons for his excuses were genuine. And your case authority for that proposition is? Well, Millerell, Rice v. Collins didn't use comparative analysis in the state court, didn't require the state court to do it, even though Rice v. Collins used the comparative analysis for the first time in Federal court on appeal. What do you do with the case of Green v. Lamarck? We talked about you look at the totality of the circumstances. Well, certainly. I think the language in Green v. Lamarck says that the direct evidence, the circumstantial evidence may include a comparative analysis. It doesn't say that it has to include in the state court level a comparative analysis. So for that reason, I would argue to this Court that there isn't authority compelling that state court to conduct a comparative analysis. All right. The three steps that Millerell tells us both state and Federal court should follow are first, has the petitioner made a prima facie case? Has he or she shown a significant possibility of racial discrimination in the exercise of peremptory challenges? Step one. Step two is if the court finds yes, then the burden shifts going forward to a prosecutor to explain her actions and to present non-discriminatory reasons for her actions. Then if she does that, then we move to the third stage, at which point the court must make factual determinations as to the accuracy and truthfulness of the prosecution's statements.  Now, there's some hint that the court may consider that the first test, too, but we've gotten beyond the first and second test here. My understanding is it's just a part of critiquing the accuracy and truthfulness of the prosecutor's statements. Under those circumstances where the state judge did make it to the third stage, and he or she evaluated the demeanor and credibility of the prosecutor and concluded that regardless of the merits or demerits of her reasons, they were at least not discriminatory, how do you factor in this court conducting its own comparative analysis? In other words, assume for the moment that the court, this court does conduct a comparative analysis of the prosecutor's statements, and that the prosecutor's reasons seem pretty shaky, and that some of the people who were not challenged have characteristics very similar to what the prosecutor said led her to challenge virtually all of the minority representatives available to her. Where do we go from there? The trial judge says, well, I believe her. I've looked at her, looked her in the eye, I've heard her talk. I conclude she's credible. And we find some suggestion that perhaps she isn't. Where do we go from there? Well, certainly I believe that the case law allows this court to look at the comparative analysis for the first time on appeal, and I think, and on habeas corpus, I think that's what the Miller L. and the Rice v. Collins cases suggest. Even if the state courts did not conduct a comparative analysis, and we know the court of appeal in the state court said that it wasn't going to and it wasn't required to. In this case, I would point out that the evidence shows that the prosecutor did not kick off all of the minority jurors. The final jury that was actually empaneled was a very mixed jury. It had, I believe, five Caucasians, four Hispanics, two blacks, and one Asian. So it was a very mixed panel, and the prosecutor didn't kick off all the minority jurors. In any event, if we do look at the comparative analysis and the district court looked at four jurors, I don't think that comparative analysis shows that the prosecutor had a discriminatory intent. I think it's important to point out that in the case of the San Bernardino case, 0970, she had a brother who served time for arson, was incarcerated for both arson and possession of drugs. Also, that juror had a brother that was killed in San Bernardino in 1989, which is in Southern California, and nobody was ever brought to arrest it or brought to justice for that. So I think it's important to point out that in the case of the San Bernardino case, those are two red flags for a prosecutor when you have a picking a jury. What did you talk about, the postal worker, where the judge added to the reason given by the prosecutor? The prosecutor said she'd had bad luck with postal workers, although she kept one on. And then the judge said, well, I guess that's all right, because I watched the demeanor of that. Was that appropriate for the judge to add to the reason given by the prosecutor? Well, the trial judge didn't actually rule that the prosecutor's reasons weren't genuine. It simply added to it and said, I'm looking at this, and that would have been an appropriate juror to kick off in any case, even if the prosecutor had a bad luck. And that's what I saw. I saw the facial expressions of the juror. That was the judge speaking, not the prosecutor. Yes. Is that permissible for the judge to add to the prosecutor's reasons? Well, it's certainly permissible for the judge to say what he observed. However, I think what this Court needs to do is to look at the prosecutor's reasons, what the prosecutor stated. So if we exclude the statement of the judge and we add to the fact that another postal worker remained on the juror, doesn't that make the reason suspect? I don't believe it does, Your Honor. In Miller L., the comparative analysis is used because a similar-situated juror was left on the jury who was – a black was removed from the jury and a non-black was left on the jury. In this case, both the jurors actually had the same number, 3117, but a black postal worker was removed from the jury, a black postal worker was left on the jury. So that by itself does not show that there was discrimination. It wasn't as if all the minority jurors were removed from the jury. Also, the juror – But isn't it true we only need to find discrimination with respect to one juror and that would be sufficient? Yes, Your Honor. All right. The black postal worker who remained on the jury had several things about her which would make her a pro-prosecution juror, someone the prosecutor would want to keep. For instance, she had been on four prior juries that reached verdicts, including two criminal juries. Also, she had a son who had been murdered in Carson and prosecuted from – and his killer was brought to justice. So that's somebody that a prosecutor might want to keep on the jury even if this prosecutor, as she stated, had a terrible experience with postal workers and in general didn't want to keep a postal worker on the jury. Those facts are not in the record as to the postal worker juror that was removed. So these two jurors were not identical in every way. They were not cookie-cutter jurors, even though they were both postal workers. Does the fact that this was the last member of the venere with – and the prosecutor said that the prosecutor accepts with reluctance only after learning that the court could not get any more jurors today. Is that something that we can take into account? Well, certainly all the facts that occurred in the void year we can take into account. The prosecutor did have, I believe, one preemptory challenge left. And when you come to the end of preemptory challenges, you perhaps don't want to use them on something that's more of an impulse or an instinct, like not having postal workers on the jury. And you perhaps want to save that for somebody who comes in the next batch of jurors who, for instance, may have gang tattoos all over their face and you definitely want to get rid of them. Counsel, you're down about 3 minutes, 20 seconds. Do you want to reserve or – it's your choice. You indicated you wanted to reserve. I would like to reserve for Valior. You may do so. We'll hear from the Federal Defender. Good morning, Your Honors. Breonna Fuller on behalf of Keith Jamerson. Your Honors, I guess I want to start where my opponent started, which was to say that there's no Supreme Court law requiring a comparative juror analysis be conducted. And I think it's clear that in Miller L., the Court said that the courts have to use whatever evidence is available to them to determine whether the reason was discriminatory. And the comparative juror analysis is one of those tools in their toolbox. The Court also said, and then this Court has said in Kessler, that that comparative juror analysis was clearly established case law as of 1992, which was long before the trial in this case, of course. Therefore, I don't think it can be said that comparative juror analysis – You aren't saying it's required. You're saying they may. I think when you take the two propositions of Miller L. together, it has to be considered in cases where it's relevant. The one is that the courts have to use whatever evidence is available to them to determine whether the prosecutor is being genuine. And the fact that comparative juror analysis is one of those tools. It may not be relevant in every case. There may simply not be similarly situated jurors. And in that case, then they don't have to go through a feudal effort. But where there were jurors that were so similar to the ones that were being struck, I think that Miller L. does require the Court to do that. But we still have the double deference principle to apply, do we not? We do, Your Honor. And I think the problem here is that the reason that that's not a hurdle in this case, that that shouldn't result in reversal in this case, is that both the trial court and the court of appeal had problems, right? The court of appeal had multiple issues. One, they didn't conduct a comparative juror analysis. But is that required? I guess perhaps we'd have to agree to disagree. I read Miller L. to require it. And the other words, Miller L., in your view, requires the State court to make that independent determination in every case. That raises the issue. In every case where it's relevant, where there are similar situated jurors. I think that if this case had come up now and the Petitioner had been making the arguments that it made at the time, that the California courts would have to consider that comparative juror analysis. So the California court of appeal was laboring under that error. When it made its analysis, it listed a number of factors that it said were race neutral, but a number of those factors weren't factors that were stated by the prosecutor. They were reasons that were, A, given by the judge, or they were reasons that were offered by the parties on appeal. As Judge Nelson pointed out, Miller L. requires that the court look only to the reasons that the prosecutor gives. I think the language is that the substitution of reasons by the court does nothing to satisfy the prosecutor's burden. And so the California court of appeal had that problem. It also had, I think, the problem that was raised in Green, which was the fact that the facts in Green were that the courts rattled off a number of race neutral reasons, said those have been upheld in the past, and then said we defer to the trial court. And Green said that was a D2 problem as well. And that's essentially what the California court of appeal did here. So although there is, of course, this double deference, I think that's the problem with the California court of appeal decision. Now, the trial court itself was laboring under the misunderstanding about comparative juror analysis. And as Judge Nelson also brought up, this was a fact that the court sued. Scalia. And when you say trial court, would you mean the State trial court? I'm sorry. I mean the State trial court. That the State trial court was laboring under the error that it was not to conduct a comparative juror analysis. And also, it believed that it could substitute reasons. I think it's the fairest reading of the trial court's comments about the postal worker were that, while being a postal worker would not necessarily be enough by itself, that I had seen these other things, and so I'm going to say that this was a bad juror. And that's not allowed under Miller-Ell. So I think although we have double deference, in each situation, the deference should not hold sway in this case. I want to get back to another thing that Judge O'Scanlan raised, which was did this court accompany with my opponent? It's clear that the comparative juror analysis only applied to Avis B. and Eileen E. I'm bad with numbers, so I'll refer to their name. The two that were based on their connection to criminal justice. That's 970 and 619? Let me just double check. Like I said, I'm having trouble. Yes. 0970, 0619, Avis B. and Eileen E. It didn't affect the juror who said. In other words, you're conceding that there's no problem with respect to those two? Is that what you're saying? I'm not conceding that there's no problem. I'm saying that the comparative juror analysis, if this Court were to say, let me put it a better way perhaps, this Court could affirm the district court's decision by saying it was right about the two jurors that did not require comparative juror analysis. There's two of the jurors, the one who had the hepatitis shot, that's juror 4856, and the postal worker, which is juror 3117, for which the Court didn't resort to comparative juror analysis. Well, with respect to 3117D, that postal worker, there was another postal worker that did serve, but that postal worker was black. Can we take that into consideration? It certainly can be taken into consideration. And in fact, and I don't have the name of the case, but I could provide it. What concerns me here is that I worry about Federal district judges retrying a State court case, second-guessing each of the remarks or challenges that were made in the State court, notwithstanding the fact that there was a court of appeal State level that looked into all of these. So as I look at double deference, I want to be sure that we aren't, in effect, retrying this case de novo in a Federal district court. So help me with that. Why wasn't the reason given with respect to 3117D adequate and not a sign of bias or racial bias? I think the district court's reasoning was that this was a non-case-related reason, that it's not a reason that's been, that had any relation to the case to be tried, and that it equally applied to other jurors. Now, remember, the district court did say, if this had been the only juror, I might not have granted this, right? So, I mean, I think that, you know, I think that the juror 4856 is the clearest and strongest. That's the one who had a hepatitis shot and where the prosecutor said, you know, he had hepatitis and I was worried he'd be sympathetic to a person who had a cane in the car. There's no logical connection there. It's a non sequitur. In fact, I think it's highly similar to the facts of Snyder v. Louisiana, the case that where Justice Alito found. These two facts have no connection. That's the one where it was a substitute teacher who said, I'm concerned about missing too much student teaching. I'm sorry, not substitute teacher, student teacher. And I'm concerned about missing too much time. The judge offered to call the dean. The dean said, we'll make up the time. Don't worry about it. And the teacher said, okay, that's fine. The prosecutor then tried to strike that juror, saying, well, I was very concerned that person would rush to judgment and would not take the time to deliberate in facts like that. And Justice Alito said there's no connection there. That doesn't make sense. And I think the same could be said here. And that does not resort to the – that does not require the comparative juror analysis. And so this Court, because one juror is enough, this Court could very easily say, well, we're not even going to get to the pinholster questions. We're not going to get to the other jurors. Scalia. Well, while we're still on this same juror, the magistrate judge didn't point out that no other juror suffered from a physical ailment. Isn't that correct? But that wasn't the reason the prosecutor gave. The prosecutor didn't say, I'm taking this person out because they have a physical ailment and they're not going to be able to sit in court all day or that they might, again, hurry through because they want to get out and get back into bed. He said, I was concerned about sympathy. I was concerned that that person would be sympathetic to the defendant. And I think you have to take the prosecutor's reason as what it was. Okay. But I'm still focusing on the test that we apply. Don't we have to be concerned with relevance, which requires only that the prosecutor express a believable and articulable connection between the race-neutral characteristic identified and the desirability of a prospective juror? Isn't that what we're tasked with? I think what the district court was saying was this is an unbelievable reason. There's no connection between those two things. There's no reason. Perhaps we believe that all people might be more sympathetic to a person who has a cane. But there's no reason in particular to believe that a person who has a hepatitis shot scheduled at the end of the week is going to be overly sympathetic to this defendant. I think that's – I agree that the test is there, but I think what the district court is saying is that this isn't believable. And is that an objective standard or a subjective standard? I think it has to be – it has to be objectively reasonable. I think there has to be – I guess the genuineness thing is the same. How do reasonable people disagree with respect to that?  You're picking a jury. Things are moving. This seems to be – there's – never underestimate the possibility of hunch in this whole prospect. And so why wouldn't that be enough and clearly nonracial or nondiscriminatory? It is certainly nonracial as to get past step two. What the district court is saying is that that's not – that that's not reasonably related. That's not – I think Batson says it has to be related to his view about the outcome of the case, that a person who has a hepatitis shot isn't logically connected to whether they're going to be sympathetic to a person that they can or not. And that was the district court's reasoning. So I guess to get back to this, you know, these thorny pinholster questions, the court could say we don't have to get there because the court was – the district court was at least right as to juror 4856, the individual with the hepatitis shot. It could also say that about the postal worker, because that didn't rely on any kind of comparative juror analysis. I don't know if the Court has other questions. Those are it. Roberts. No. No other questions. Thank you, counsel. Oh, I'm sorry, Judge. No. No. No further questions. Thank you very much. Mr. Wildman, you have reserved some time. Yes, Your Honor. I have reserved some time, which gives me a chance to talk about juror 4856. No other jurors, as was pointed out, sat on the jury who had medical issues. Also, that medical issue was tied into the fact that this juror wanted to get out on a jury hardship for an extraordinary excuse. And there were no other jurors who were actually seated on the jury, using comparative analysis, that tried to get out of the jury for a hardship excuse. Well, why is any of that relevant, if it wasn't something that the prosecutor depended on or relied on when she was asked to give her reasons? Yes, Your Honor. The prosecutor did talk about the medical condition having to do with sympathy for the defendant, possibly. I would argue that is also tied in because of the context it came up in with the hardship. But it's a reasonable inference the prosecutor drew between the medical condition and the fact that he might have sympathy for the defendant. It may not be the same inference that any of us might draw if we were the prosecutor in that case, but it's reasonable. And a trial lawyer's judgments about jury sympathies are sometimes based on hunches and educated guesses, which is what Justice O'Connor said in the J.E.B. v. Alabama case. So that's the primary reason that the prosecutor gave. The prosecutor also talked about this juror being single, unemployed, no kids, no jury experience, and nobody else who was unemployed did sit on the jury. In the end, as the Judge said, I think this is a very close case. I think it's a very difficult case. But what does the fact that he had a cane have to do with whether or not he should serve as a juror? Does that go to the sympathy again if he comes in with a cane? Well, what is the connectedness of that? This juror was very concerned about the fact that he had hepatitis and he might miss getting his shot. But that was cleared up by the judge saying he could take his shots, that would be all right. So assuming that there would be no problem with the shots, he also seemed to depend on the fact that, well, he had a cane. Well, certainly the trial judge did a great job of clearing up the schedule and conflict, although it didn't sound, at least in the cold record, that this juror was happy with the way it was resolved. He didn't say that's great, Judge. He said, I guess so. It's not the strongest connection, but it's an instinct. It's a hunch, apparently, that the prosecutor had that this juror might see the defendant walking in with a cane. It might feel this juror was, that the defendant was suffering from a disability. Also, we don't know if that might have come up as part of the defense in the case. The prosecutor might have assumed that it might have come up in some context there. And I don't know if that's enough for the prosecutor to say, I have a hunch. Then what happens to Batson at all? I mean, does Batson have any meaning? What absolutely does is the first line of defense, obviously, against racial discrimination, so the trial judge is there in the courtroom to look at the demeanor of the prosecutor and to assess whether the prosecutor is being credible in stating the prosecutor's case for the purported challenges. And this trial judge was there and observed the prosecutor, didn't say, that sounds like a ridiculous reason. In fact, the defense attorney was also there and didn't say it was a ridiculous reason. So there must be some, we're not there in the courtroom looking at this juror, and we don't know what the attorneys in the trial court observed, but there must have been something about that juror that caused the prosecutor to feel that he might be more sympathetic to the defendant than otherwise might be the case. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Singleton, Nelson, O'Scannlain